Good morning. I'll call our first case, United States v. Chapman. Mr. Kraus. May it please the court. My name is Ronald Kraus. I'm an assistant federal public defender with the Federal District of Pennsylvania, and I represent the appellant Sean Chapman. I'd like to reserve three minutes for rebuttal. Done. Mr. Chapman seeks remand for resentencing because his guidelines calculation erroneously designated him a career offender. A career offender doesn't apply because his offense is mailing a threatening communication under 87.6c. It's not a crime of violence as defined in the guidelines. Its elements cover broader conduct in the language defining a crime of violence. Why don't we, you know, we've read your briefing and everything. Let's get right into it. Am I right that you say that this is not a divisible statute? Yes, and that would make pretty quick work of this case, actually, Your Honor, if the court were to decide that this was an indivisible statute. Would it make pretty quick work of it on the other side if we were to decide that it was a divisible statute? No, it wouldn't. So that totally swings in your favor, is that what you're saying? Well, I've got arguments either way, Your Honor. Assume for just the sake of discussion, we thought that kidnapping and mailing a threatening letter that threatened bodily harm were different things, and it was a divisible statute. Divisible, you said? Yes. So if we were to think that that was the right way to approach the statute, what would your next step be? Well, the analysis would be, the question that the court would have to decide is, does the threat to injure the person or the victim sweep more broadly than the threat to use violent physical force against the person or the victim? Violent, as defined in Johnson, being force capable of causing pain or injury. My first, so I read the letter, not the first of its sort that your client sent. It's relatively graphic. If we look at the Shepard documents here, and we see that the charge is the threatening of an injury, and we consider that your client, well, I guess the way to ask it is not focusing at all on the letter, but just looking at the Shepard document and the way the government chose to focus on the threat of bodily injury. How is sending a letter, which is alleged to be a threat of bodily injury, not squarely within the elements that are considered by that portion of the guidelines? Well, because the case law, I think, is pretty clear that when you're following the modified categorical approach, as you just outlined, that that's just a tool for what is really the categorical approach, which is to look at the elements of statute, not the conduct of the defendant. So we put out of our mind the actual letter. Yes. And we look at what was charged, because that's a Shepard document. We can look at that. Yes. And then they charge that it's a threatening letter. I mean, we could pull up the indictment and read it, but we've all looked at it. Yes. Explain how that's not what 4B1.1 is talking about. Well, it might be talking about that in some respects, but we still have to go back to the elements of 876C and see if those elements match the definition under 4B1.2 or cover conducts that is broader. I don't understand that. I'm sorry. Go ahead. I don't understand that. So that means if we apply the modified categorical approach and look at the documents that we're permitted to look at, come to a conclusion, you then say we go back to the categorical approach and ignore those documents? That's pretty much what the cases have said, that you're still the – that modified categorical approach is just a tool to be used when there's a divisible statute so that you pare down to what the real element is that you are dealing with. And then once you have that element, you're essentially back to a categorical approach. You're just using other documents to help you get there. That's exactly right. But all those documents inform your ultimate conclusion. Not necessarily. If you're looking just at the elements of this pared-down offense that you're talking about, you look at the elements of that pared-down offense, and the conduct really doesn't come into play. Well, how about – well, I didn't say the conduct would come into play. I said the consideration of the documents would come into play. Yes. The question is, after taking into account those documents that are permissible under the modified categorical approach, how do we, in your view, come to a conclusion that it is other than a crime of violence? Okay. There are two ways that you can approach this. One way is that the language of injure the person does not necessarily rule out non-physical injury. There's nothing in the case law – But we've got – with Castleman. Yeah, address Castleman. How do you get around Castleman? Well, Castleman was a very limited opinion. It dealt with a domestic violence statute that was enacted with very specific goals in mind, and there's language in Castleman which says very specifically that we don't intend the ruling in Castleman to affect statutes that discuss violence in other contexts. Well, how – I think this is a context that doesn't apply. Face up to the point in Castleman that a threat to cause bodily injury necessarily involves a threat of physical force. Isn't that the root holding of Castleman that you've got to address? Well, I wouldn't say it's the root holding of Castleman because it was interpreting a common law battery statute, which is not always an issue in a lot of other cases. But let me address what I think you're right is the critical question, which is does threat to injure the person of – we'll call victim – sweep more broadly than threat to use violent physical force against victim? And I would argue that it does in two different ways. First of all, as I began before, the language of injure the person doesn't rule out non-physical injury. There's nothing in the language or case law that I could find that prevents threatening injury to reputation or finances, which would be without a threat of physical force. But these outliers that you would have, you know, reputation, these are outliers. How many cases do you have – let's look at what the court said in Hill. You know, how many cases do you have where you have these unusual types of injury that would you say doesn't fit within the concept? I think there may be more coming, Your Honor, although I don't think the aloneness case – Well, but I mean to injure the person, you conjure up the concept of I'm going to injure you. I'm going to injure – it conjures up the notion of physical force and bodily injury, does it not? Well, let me give you an example. Suppose someone mailed a threat and said I'm going to post a sex tape of my ex-girlfriend on Facebook. Would that be an injury to the ex-girlfriend? And is it possible – Injure the person. Because that's all the tape. Well, and doesn't – and don't you have to deal with this in the context of what the guideline is and the statute at issue 876 are talking about? Well, I think the guideline is going after – and Johnson in 2010, I think, emphasizes it's going after someone who engaged in violent physical force. And if you're going to accept the idea that it can be non-physical injury, then certainly there's going to be circumstances where there's non-physical force. And there are cases. There's a Second Circuit case from 2000, United States v. Dosimo, and I can give the court the citation, where the defendant was convicted under 876 for mailing letters containing explicit instructions for the recipients, including orders to engage in sexual conduct in public with other family members. And then more recently, in the Northern District of California, an indictment under 876C survived a motion to dismiss where the victim received a letter including claims that the victim was a drug addict, bad husband, a homosexual, urged the victim to kill himself, and included a graphic depiction of a sex act as well as racial slurs. Now, no violent physical force involved here, and yet it's not unreasonable to say that this was injuring the person of the victim. And did the court say that that was injuring the person of the victim? Well, the indictment under 876C was upheld, and that was the ruling in the Dosimo case in the Second Circuit. These are in addition to the – so neither of these two cases were in the papers, right? I'm sorry? Neither of these two cases were in the papers? In your papers, no. So they're – yeah, I would consider them outliers. Recently researched after some more work. But if you're not willing to accept the non-bodily injury, then we have to look at where there's some physical injury without physical force. And there are – I mean, you could accept the non-bodily injury argument had you made it, but since you're making it for the first time here in court, it's a little tough for your opponent to respond and for us to ask you considered questions. I apologize, Your Honor. I'd be happy to provide some – These are within the last week, right? I mean, we've had more 28 days in this case than most. Yes. Right? Yes. Okay. So this is not cases that are brand new. It's just you've thought about it and come to a new way of looking at it. Yes, Your Honor. Okay. Well, you had started to say one last thing. I'll give you an opportunity to wrap up, and then we'll hear you on rebuttal. Well, in terms of cases where there is bodily injury, you have the First, Fourth, and Fifth Circuits all holding that non-violent physical force can cause injury. Those tend to be the poison cases. But there are other cases, the Zavrel case in the Third Circuit involved cornstarch in an envelope. No physical force there, and yet that was an 876 conviction. All right. Thank you. Thank you. Thank you, Mr. Krause. We'll hear from Ms. Haywood. Good morning. May it please the Court, my name is Rebecca Haywood here on behalf of the United States, and I'm here today to ask you to affirm the district court's decision that mailing a threat to injure a person is a crime of violence under the guidelines. Okay. Why don't you begin, Ms. Haywood, where your colleague left off, which is even if we were to say this isn't the visible statute, 876, he is broad enough to cover non-physical things like threats to reputation. The plain language of the statute in question requires a threat to injure the person or the person of another. The plain language there indicates there has to be an injury to a person. Well, right, and I recognize that you're being caught short here because Mr. Krause is giving us a new theory and new case law from the lectern, but it is what it is. So to the extent you can answer it, do you have a response? Are you saying that person can only mean the physical person? That's correct. And you also have to read it in connection with the word threat. And in the Stott case, this court held with regard to a different statute, another threat statute, that there has to be a present or future threat. That also indicates a threat to a person. So, again, the language here, you have to read the word person to include, to be part of the statute. So it's the government's position that this statute, and the way it's normally charged, the natural way this case has been charged by the government has included threats to harm the person. Right, but we're hearing, no, the government has chosen to charge people and, in fact, gotten convictions when there has been no physical harm at all. There's been a fake anthrax attack. There's been a threat to expose somebody to ridicule or embarrassment associated with the nature of an extortion because of, you know, pictures or videotape or something. If the government decides to take steps like that, and charge and prosecute people when there isn't a physical injury, has the government acknowledged that this goes beyond, 876, goes beyond physical injury alone? I can take those two separately. First, with regard to the anthrax threats, that would involve, according to the government, a threat to the person of another. When you're sending anthrax or even fake anthrax, you're threatening directly there. You're threatening to harm the person of another or the people who would be exposed to the threat. Now, with regard to the reputation, I'm not aware of those cases, but I would note that, again, the language, I would just cite to the plain language of the statute, I will have to look at these cases. I would say that this argument's been waived as it's presented here for the first time. It will argument, certainly, but, again, you know, we have to go to a jury and prove beyond a reasonable doubt that there is a threat to injure a person. And according to us, that would mean a physical threat. But certainly, sending anthrax would qualify. Okay. Can you talk about the initial argument that we moved past with Mr. Krauss, which is their first step saying that this isn't a divisible statute at all? Well, in Mr. Chapman's brief, when he cited the statute, he cited only the threat to injure part, footnote two of his brief. When he cited the statute at issue, and we assumed that he meant to accept the government's position that this is a divisible statute. And he did write his brief before the Supreme Court had decided its decision in Mathis, which clarified the question of divisibility. And in that, it talked about when something is a means and when something is an element. And the third way the Mathis court said you can determine whether something is an element is to look at the charging documents. And when you look at the charging document in this case, we charge only a threat to injure. And according to us. Yeah. Now, can I ask you, just as a logical matter, this is a little bit challenging. How is it that in order to decide whether or not something is divisible so that we can decide whether or not to apply the modified categorical approach so that we can look at Shepherd documents like the indictment, that we need to look at the indictment in the first instance? I do understand that in Mathis, the justice says it's an easy thing to do. In our mind, it's not always easy to determine whether something is an element or a means. But you start by noting that it's listed in terms of or. So here we have a statute that says you are guilty of this if you knowingly mail a communication with a threat to kidnap or injure. Yeah. But it is the government's position that in order to decide whether we can look at the indictment, we need to look at the indictment. Well, no. You first start with the statute. And if the statute is listed in a way that it separates things and parts of the statute with the word or, then it's possibly a divisible statute. And therefore, you can then look to the charging documents. And this happened a lot, for instance, in terms of mens rea. A lot of our cases, a lot of the statutes charge mens rea with intentional and or reckless. And the charging documents also charge or. And therefore, that indicates that's not actually an element because it can be proven either way. Does it make a difference? And again, the government's position in this case, the threat of kidnapping really wasn't briefed here by Mr. Chapman. But it's our position that it doesn't matter because if you threaten to kidnap a person, you are by definition threatening physical force. Now, you can talk about kidnapping by guile or deception, but that's the offense of kidnapping. But what we have here is a threat to statute prohibiting a threat to kidnap. And therefore, that would necessarily involve the fear induced with receiving a letter in the mail that you're threatening to kidnap someone. And accordingly, it's our position that the issue of divisibility is an interesting one, but it doesn't matter because categorically, the statute is a crime or violence. The Castleman discussion of the indirect use of poison, et cetera, et cetera, is that dicta or part of the holding? Well, Castleman did not involve the Anchor Criminal Act or the sentencing guidelines. Certainly, the majority holding in Castleman related to 922G9 and the domestic misdemeanor crime or violence statute. But it's the government's position that Castleman has two separate holdings. The first part is the question of what level of force is necessary to satisfy 922G9. The second part is the question of what really physical force means and does bodily injury mean physical force. In that part of Castleman, the Supreme Court's majority actually cites Johnson 2010 and notes that Johnson 2010 talks about concrete bodies acting upon each other. The other thing to note is the examples in that part of the statute that we're talking about are pulling the trigger of a gun. As indirect, potentially. Exactly. And that could potentially be indirect and then would not qualify under the reasons that Mr. Chapman has set forth here. And I'd also note, we're dealing with about 300 different habeas petitions in the Western District of Pennsylvania. And in those habeas petitions, we're dealing with this argument in every case. There's first-degree murder and bank robbery and armed bank robbery that when you induce fear, you can do it indirectly. It doesn't count. So this part of Castleman from the government's perspective does have broad application to those cases and isn't limited to 922G9. You referenced inducing fear. What does that have to do with the issue before us? Well, just in terms of intimidation and bank robbery, the argument is that when you go into a bank and you intimidate someone by fear, that that doesn't qualify as a crime of violence because we could do that by poison and not. We can do that indirectly. And I'd also note that the concurrence in Castleman by Justice Scalia is particularly important because Justice Scalia wrote Johnson 2010. And I think an interesting thing in this case is that we actually argue that Johnson supports our argument here. Okay. Thanks very much, Ms. Hayward. I appreciate it. Mr. Crafts, we'll hear you in rebuttal. Thank you, Your Honors. Just very quickly, Your Honor, first I'd like to apologize for some of my tardy arguments that I raised. By way of explanation, this is a fast-moving legal area. Cases come down where – How old are these cases? I'm sorry? How old are these cases? Those cases could have been found, but the impetus to find them and support certain arguments came a little bit later. And I wasn't making any effort to sandbag counsel, and I'd certainly be happy to provide further briefing and have counsel have that opportunity to respond. Now, I certainly hope you don't penalize my client for my actions. Why shouldn't we deem it brave, though? I don't – Well, I – She made the waiver argument. I made the argument that it was – first of all, that it was indivisible. That was certainly in there. And I didn't press the argument on non-bodily injury only because it seemed pretty clear that here there was a threat for bodily injury. That's not really – And I thought that that would answer the question. Yeah, it's not helping us with the main point, which is when you say don't penalize your client, you know, maybe – and maybe you'd lose in any event on that argument, but the waiver question is an important one. It's a new argument that we're hearing with some new citations to support it. Typically when that happens, we say, you know, wasn't briefed. It wasn't fairly before the court. That looks like waiver. Why isn't it waiver? I understand, Your Honor, but the argument came up in the course of my preparation, and I felt compelled for my client's sake to raise it. And, of course, the court will deal with it as it feels best. Okay. Thank you. All right. Thank you. I appreciate the argument of counsel today. We've got the matter under advice.